**FILED - GR**

February 24, 2017 9:40 AM

CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:__ns_/____ Scanned: 2\1\17 \_\_

**United States District Court**
**Western District of Michigan**
399 Federal Building
110 Michigan Street, N.W.
Grand Rapids, MI 49503

| | | |
|---|---|---|
| Eric D. Welch, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | **2:17-cv-38** |
| vs. | ) Civil Action No._____ | Gordon J. Quist - U.S. District Judge |
| | ) | Timothy P. Greeley - U.S. Magistrate Judge |
| Mark L. Dobias, | ) | |
| *Personally and Individually,* | ) | |
| *(Michigan Attorney Bar* | ) | |
| *License P35160),* | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT for DAMAGES

Jury Trial is Demanded

### I    Introduction

This is a lawsuit that, at the Court's discretion, is under either a *Bivens* action, a

42 U.S.C. § 1983 action, or both, filed by Plaintiff Eric Welch, a federal prisoner,

alleging violation of his constitutional rights to due process, right of access to the courts,

and seeking injunction relief and money damages.

## II    Jurisdiction

a.      This action arises under the United States Constitution, Amendments I, V, VIII, and VIX. Defendant Dobias did deny, impede, or frustrate Plaintiff's access to the courts, and his due process of law[1] while Defendant acted under color of law (both as a member of the Michigan Bar and at the same time Defendant was also admitted to practice in federal court.) 28 U.S.C. § 1331.

b.      The Plaintiff is a citizen of Wisconsin. The Defendant is a citizen of Michigan. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

At the Court's discretion, supplemental jurisdiction is invoked under 28 U.S.C. § 1367 because certain state-law claims arise out of the same facts as the federal claims, and are not a novel or complex issue of state law. Further, that the State claims, while egregious, do not substantially predominate the federal constitutional claims over which the district court has original jurisdiction.

---

[1] *Lewis v. Casey*, 518 U.S. 343 (1996)

## III   Parties

Plaintiff:     Eric D. Welch,
               a Resident[2] Citizen of:

               7580 Pond Rd.
               Hartford, Wisconsin 53027-9226
               WI Driver's License No.: W420-2047-0095-06 (exp. 3/15/2011)

       Mr. Welch's current contact/incarcerated mailing address:

               P.O. Box 1000/10444-089
               U.S. Penitentiary – Marion
               Marion, IL 62959

Defendant:     Mark L. Dobias,
               Michigan Attorney P35160
               546 Ashmun Street
               Sault Ste. Marie, Michigan 49783
               dobiaslaw@sbcglobal.net

---

[2] A prisoner's residence or "domicile" is presumed to be the state he lived in before being imprisoned. *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir. 1991) (citing cases); *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006) (citing cases).

## IV.   Facts

### The 2007 State Case That Preceded Defendant Dobias' Appointment in the 2010 Federal Case

1.  In 2007, the State of Michigan crafted a plea which Plaintiff accepted, for allegedly

    Accosting a Child for Immoral Purposes, in violation of Michigan Comp. L.

    §750.145a, and Telecommunications Device Access Violations, in violation of

    Michigan Comp. L. §750.540c. [*People v. Welch*, Houghton County Circuit Court,

    File No. 07-2225-FH, 2007].

2.  Counsel (now Judge) Mark Wisti represented Plaintiff, and the transcript summarizes

    the facts as follows:

    THE COURT: Thank you, Mr. Strome. Mr. Wisti?

    MR. WISTI: I will – I think the phrase hunting on the internet for young
    girls miscategorizes the facts of this case dramatically, Your Honor. Ah,
    what occurred here is that the Michigan State Police used a prostitute to
    contact Mr. Welch and advise him that she had a thirteen year old girl
    available to have sex with him – fourteen year old girl to have sex with
    him, and Mr. Welch, and I don't condone his behavior at all, Your Honor,
    bit on that hook, line and sinker. But this is not a case where he was out
    preying on the Internet and approached someone at random, but was in
    fact picked out by the police and this prostitute.

    [*Id.*, Sentencing Transcript at 27, August 31, 2007].

3.  (Judge) Wisti, witness Krista Welch, and Plaintiff each verified under oath that the

    state-court plea promised that in exchange for his guilty and nolo contendre plea, the

    State would not seek additional charges, state or federal, and "*would not forward any*

    *evidence to federal authorities.*"

Affidavit of Mark Wisti, ¶3: "That it is my recollection of the plea agreement that the Assistant Prosecuting Attorney for Houghton County had agreed not to bring any further charges against Eric Dexter Welch if Mr. Welch entered into a plea agreement with regard to the State charges.

¶4: "That it is further my recollection that the Prosecuting Attorney's Office agreed that they would not report this matter to the federal government in exchange for Eric Dexter Welch's plea." [Exhibit A].

Affidavit of Krista Welch, ¶4: "That it is my recollection that the Michigan State Police and the Prosecuting Attorney informed Eric and I during these meetings (in total) that if he dropped the 'entrapment' defense, and pled guilty to the two felony charges they were offering, the State Police (Tom Rajala and whoever he worked with officially or in a professional relationship status) and the Prosecuting Attorney would not seek any additional charges, state or federal This included handing any evidence over from the 2007 investigation to the Federal government.

¶5: That it is further my recollection that I had no reason to believe that all the necessary permissions to craft such a plea were not obtained. I was in Mr. Wisti's office in 2007 when we (Eric and I) were told about the plea, and I never would have suggested that route if we had any reason to doubt it, as Mr. Wisti had someone from either the prosecutor's office and/or governmental law enforcement on the phone while we discussed it." [Exhibit B].

Affidavit or Eric Welch, ¶5: "...Mr. Wisti, my wife Krista, and I were all in the room, and all able to hear the voices on the other end of the phone line. Rajala and Strome promised to not seek any additional charges, and also to not seek a federal prosecution and not turn any evidence over. It was further added that state authorities (Strome, Rajala, and their agents) would seek and obtain the permissions to make such a plea, and they would get back in contact with us, regarding confirmation. The evidence was to be destroyed after appeal rights were

passed. Any bargained charges of child pornography were to be estopped by the plea and , binding on state and federal jurisdictions." [Exhibit C].

4. Michigan State Police ("MSP") Detective Sergeant Tom Rajala memorialized his knowledge of the plea in his Incident Report.

"07-31-07 D/Sgt Rajala 'Welch plead [sic] guilty to Accost Minor Immoral Purpose and no contest to Telecommunication Device Violation – both 4 year felonies, this date. Sentencing scheduled for 08-31-2007 at 11 a.m. Possession of Child Pornography will not be authorized as part of plea agreement.'"
[Exhibit D].

5. In October of 2007, two MSP officers witnessed destruction of the evidence in accordance with the plea and MSP policy. [Exhibit D, where PROP ITEM 1, the only item recorded as retained, was a CD of audio-recorded phone calls, and not the evidence discussed below].

**The State-Court Plea Is Violated After Plaintiff Serves His Sentence**

6. In November of 2008, and in violation of the plea (and MSP policy), Det. Rajala somehow salvaged an unsanctioned copy of the state's evidence and forwarded it to the federal government, who then prosecuted it in the Western District of Michigan. [*United States v. Welch*, U.S. D.C. W.D. Mich, 2:10-cr-8].

7. Det. Rajala transferred the unsanctioned evidence under the cover of an unrelated incident report, concerning a sex offender named Steven Gilbert Schwechel. [Exhibit E].

8. Nearly 16 more months passed, and on March 4, 2010, federal authorities arrested

Plaintiff (now a resident citizen of Wisconsin, it being almost three years after the

state-court plea and two years after the state sentence was completed.)

9. That same day, shocked and in chains, Plaintiff informed federal court authorities in

Milwaukee as to the state-plea terms. Bond counsel Tom Wilmouth of the Federal

Defender Office memorialized the event:

MR. WILMOUTH: …What Mr. Welch reports to me, and because everything else he's told me matches up completely with the bond study, what he tells me happens is he gets arrested on that 5/29/07 offense in Houghton County, Michigan for those two counts – accosting and felony telecommunications – at which time he consents to – he's at that time a college student at Michigan Tech, he consents to a search of his computer at his part-time work at that time, and then these images that are part of the lone count in the indictment are found.

And they question Mr. Welch about it and he says, "Wait, wait a second, you know, there's many people with access to that computer." And law enforcement says to him, "Well, we're not concerned about it right now, we see that you're resolving the Houghton County, Michigan case, we're just going to destroy the evidence."

That was not quite three years ago but almost three years ago. And now we get this, look it, it's a 2010 indictment number, 10-cr-8 out of Michigan, some three years later, now those images recovered from a work computer shared by others has got him now on the business end of the 10 to 20 indictment.

What I'm getting at is, obviously the court's gonna be concerned about danger to the community with the release of this defendant pending him having to face the music in Michigan. But it strikes me as somewhat odd that the Michigan prosecutor is saying to Mr. Gonzales [the Wisconsin Prosecutor], ["]well, we think you ought to be detained[,"] because where have they been for three years on this[?]

And I'll tell you what's happened in those intervening three years is this particular man has moved to Hartford, Wisconsin, he's residing at the address on the bond study, so he's lived there for about two-plus years, he's married with two children, age 2-1/2 and 7. He is – I'm sorry, 7 months. I apologize.

THE COURT: Right.

MR. WILMOUTH: 2-1/2 and 7 months. He's obtained very good employment. You know, he got that electrical engineering degree at Michigan Tech and now he's working at Power Systems full-time. He makes a very, very good wage, but because of debts in the family there's not any monies to post and there's no equity in that home to post.

[Transcript at 8-10, *United States v. Welch*, Case No. 10-M-213, Initial Appearance in

Milwaukee, Wisconsin, March 4, 2010, U.S. D.C. E.D. Wisconsin, Hon. Patricia

Gorence].

The court agreed with Mr. Welch's position, and commented on the comparison

of the 2007 state plea and the 2010 federal prosecution of the same case:

THE COURT: I'm looking at the charge in the indictment, and it appears to be different in some fashion. And I agree there may be a good argument for the double jeopardy argument…" [*Id.* at 11-12]

## Defendant Dobias Stumbles Onto the Scene

10. Three weeks later, the U.S. District Court for the Western District of Michigan

appointed Mark L. Dobias (the Defendant at bar), under CJA. [Doc. 9, *United States*

*v. Welch*, 2:10-cr-8, March 30, 2010].

11. Plaintiff spoke immediately with Defendant Dobias as to both dismissing the federal

case for double jeopardy (and due process violations), but importantly, asked

Defendant to do something meaningful with the state court plea agreement violation.

Defendant declined as to the federal case, and was barely responsive as to the state

case: During April of 2010 and following, Defendant said it was possible to attack the

state plea violation, but left it at that.

12. Seven months later (after losing at federal trial on October 5, 2010[3]), Plaintiff
continued to voice concern to Defendant over the state-court plea violation, and,
having been ignored for seven months on the topic, Plaintiff turned his attention to
the federal court by writing three letters to the judge personally. While admittedly
they were filed prior to sentencing, the letters did not exist in a vacuum, for they
plainly provided state-case context. Plaintiff asked to not only "dismiss" the federal
case, but also to "extend the same kind consideration" to the state-court plea
violation. A single paragraph can summarize the 22 pages of *pro se* letter filings (and
two excerpts are attached as Exhibits F1 and F2):

> 'I am in federal prison right now because the State of Michigan
> violated our plea agreement. [Exhibit F1 at 2-3]. Please "extend
> consideration" [*Id.* at 1] to both the federal case and to "the *State of
> Michigan vs. Eric Dexter Welch.*" [*Id.* at 1]. In extending
> consideration, I want you to "dismiss this case." [*Id.* at 3, Exhibit F2 at
> 1]. All because the "plea violation" [*Id.* at 2-3] is unfair, a due process
> violation, unjust, is cruel and unusual punishment (like double
> jeopardy), and is not what I agreed to in the state-court plea agreement
> "promising no federal prosecution." [*Id.* at 2]. By the way, I can offer
> an affidavit from Judge Wisti and from an additional witness [Exhibit
> A & B] to verify my claim as true and correct.'

## Defendant Dobias Interferes With Plaintiff's Complaints to the Federal Court About the State Case Plea Violation

13. As soon as the federal judge received Plaintiff's letters, on November 15 and again on
November 16 of 2010, Defendant ordered Plaintiff to stop writing letters to the
federal court (or at least only do so by consulting him first.) [Exh. G].

---

[3] As chronicled in the letters, but unrelated to this Complaint, Defendant prohibited Plaintiff from testifying
at his own trial as to his knowledge of how computer's operate (the dispositive issue, according to the
Government), by Defendant misleading Plaintiff into believing that there would be an "automatic mistrial"
if he took the stand in his own defense.

14. Since Plaintiff had been complaining to Defendant all along anyway (providing evidence from the instant complaint to him), Plaintiff found the suggestion *confusing*, but continued requesting his help, all the way up to March of 2011.

15. Plaintiff followed Defendant's legal advice, refrained from filing anything else in federal court (until Defendant sent Plaintiff instructions on how to file an *Anders* reply brief, at which time, Plaintiff filed it in the district court).

16. In 2011, Plaintiff independently obtained the affidavits from Judge Wisti and the additional witness as to the plea violation. [Exh. A & B].

17. Shortly after arriving at Marion-USP (his current mailing address after several housing transfers between 12/10/2010 through 2/11/2011), Plaintiff made one more last-ditch effort to get Defendant to file the above concerns with the federal court against the state case plea violation. Defendant responded [See Exh. H], but just 10 days after the one-year 2254 deadline had passed, which incidentally also marked the one-year anniversary that Defendant Dobias had been acting as Plaintiff's attorney under color of law.

18. While not required to quote case law, Plaintiff could find no precedent which says his Petition would not have prevailed (if he had been allowed to file it, or if his attorney had done so for him), through 2254, or other legal means given the facts involved.

19. In November 2014, Plaintiff filed a motion in federal court under 28 U.S.C. § 2254, after exhausting remedies in a slough of post-conviction filings in the state. The 2254 included the exhausted state-court post-conviction motion, and the letters discussed

above [Plaintiff's entire 2254 and all state-court post-conviction filings are adopted into this Complaint paragraph, but to conserve space are adopted by reference.]

20. On July 13, 2015, the court denied the motion as untimely, saying Mr. Welch "took no action" prior to March of 2011. [*Welch v. Michigan*, U.S. D.C. W.D. Mich, 2:14-cv-243, Doc. #16 at 4].

21. Plaintiff timely filed a motion to vacate under 59(e), arguing that the court overlooked that he *had* filed three letters (i.e. *something*) before the March 4, 2011 deadline. The *stasis* of the controversy only *then* (after the 2254 was denied) began shifting focus as to *that* Mr. Welch had filed letters in November of 2010 (but not why he had not filed anything more), since the court mistakenly believed he had "taken no action" prior to March of 2011. [*Id.*]

22. In March of 2016, the court denied the motion to vacate. Despite not responding in any way to the letter motions in the first place, the court awoke its attention to them in the denial of the motion to vacate: "Petitioner now asks this Court to vacate its prior order approving and adopting the R&R, stating that he *did* in fact take action prior to March 2011 and, therefore, his petition was timely...Petitioner bases this argument on letters he wrote to Judge Edgar in November 2010, which he now argues should have been treated as *pro se* filings for post-conviction relief which satisfied the statute of limitations." [*Welch v. Michigan*, U.S. D.C. W.D. Mich, File No. 2:14-cv-243, Doc. 24 at 4]. This unfortunate finding came, despite Plaintiff's arguments under *Castro v. United States*, *Haines v. Kerner*, and Sixth Circuit precedent requesting an opportunity to re-file (or any sort of response, since the letters did talk of dismissing

*both* cases based on the plea violation). The court disallowed Plaintiff to file amended, formal pleadings, but affirmed its prior position on March 9, 2016.

23. Petitioner availed himself to an appeal in the Sixth Circuit, this time following the district court's meandering rulings to discover the relevance of the letter filings. They were not a part of the district court's issue with the 2254 until they overlooked them after denying it.

24. In September of 2016, a single judge of the Sixth Circuit denied Petitioner's letter-filings-as-sufficient to trigger a *Castro* re-filing opportunity, and equitable tolling determination. [*Welch v. Michigan*, No. 16-1330, Sixth Circuit, September 16, 2016 ORDER]. The September 2016 appellate court denial was the first time that Plaintiff discovered (or should have discovered) that because he did NOT file anything after the letters (on the advice of the Defendant), he was now clearly being denied habeas relief under § 2254 on a "dead bang" winning issue.

25. Petitioner moved for Panel rehearing and was again denied, definitively in January of 2017. [*Welch v. Michigan*, CA6, 16-1330, January 9, 2017]. Procedurally exhausted and discovering the harm for following Defendant's advice, Plaintiff filed the instant Complaint.

## Discovery Time

26. In sum, Plaintiff had no particular and specific reason to believe the accuracy of the district court's ruling until he completed his appeal. The district court's 2254 dismissal never commented on the letter filings. On reconsideration, the district court treated the letters as an afterthought, and "new", even though they were there all

along and included in the post-conviction filings in the State. It was not until the appellate decision (of the oversight of the district court) that Plaintiff had reason to believe Defendant's actions ultimately assassinated Plaintiff's 2254 opportunity.

27. Defendant's November 2010 advice to "stop writing anything" to the federal court harmed Plaintiff's ability to file his 2254. The Sixth Circuit found that Petitioner's letter filings asking the district court (after federal trial) to dismiss both the federal and state case for a plea violation were not 'formal enough' to 'count' as filings to initiate a petition under § 2254. The Sixth Circuit determined the following, *inter alia*: "Welch argued that he filed three letters in that federal case on November 15 and 16, 2010, that should be construed as post-conviction motions to toll the statute of limitations in [the § 2254] case…Because the letters were filed [by the clerk] in Welch's federal criminal case and cannot be construed as seeking state post-conviction relief, they do not toll the statute of limitations." [*Welch v. Michigan*, CA6, 16-1330, September 16, 2016 at 3-4]. Since the issue was not discovered until after the district court's order was appealed (the letters did not form part of the case-in-chief of the 2254 until appeal), Plaintiff, being a layman in the law, could not have known of the harm of the "stop filing" legal advice commanded by the Defendant, until the appeals court got around to squarely confronting the issue.

28. Plaintiff discovered both his injury, the person who, and the act that, were the cause of the injury when (1) the Sixth Circuit both squarely denied the 2254 as "untimely" and not "equitably tolled" and because (2) the non-lawyer Plaintiff had not filed a formal stay-and-abey motion (and formal motion under 2254), (3) based on Defendant counsel's (unconstitutional) advice (or negligent advice or

misrepresentation) that *Defendant* would do something but (4) only if Plaintiff "stop writing" the court otherwise. Defendant's (unconstitutional) actions impeded, interfered, frustrated, or denied Plaintiff's process due him by telling him to stop writing the court.

29. Defendant had a duty as Plaintiff's attorney to ensure Plaintiff the "process that is due" and as counsel. Defendant had a duty – at a minimum if he wasn't offering affirmative help – to at least not interfere with the 2254 against the state-court plea violation.

30. The federal court hearing the 2254 never met the meritorious claim of the state-court plea violation, and never mentioned the state-court judge affidavit, and additional witness affidavits. If the court had, Plaintiff would likely have received a hearing and relief under *Blackledge v. Allison*, *Santobello v. New York*, *Machibroda*, 2254, and other authority for the plea agreement issue (violated after discharge of sentence).

31. Should the 2254 have been permitted to be filed (instead of Defendant counsel blocking all Plaintiff's state-court complaints to the federal court), then Plaintiff's filing would be timely. Plaintiff reasonably believed his *pro se* letters would work, but more importantly relied on his attorney's advice to "not file anything." But for Defendant Dobias' advice, Plaintiff would have prevailed.

32. Overturning the violated plea agreement (after full discharge of punishment), would reduce the federal court's dilatory criminal enhancement calculation by several years (from 168 months down to 120 months, a four-year reduction, based on the prior state-court conviction's constitutional infirmity and withdrawal from the record). Plaintiff's yearly income of $85,000 becomes $340,000 over four years, and whether

or not the misleading advice to stop filing in a federal court (against the State of Michigan) was outside of the attorney/client contract, punitive and/or compensatory damages of $340,000 are appropriate. Additionally, Plaintiff would, with the state conviction set aside, been allowed to have any time served on the state sentence applied to his federal sentence where the state sentence conduct would have been "related." (After all, the sentence had already been fully discharged.)

33. The four-year enhanced harm denied Plaintiff the right to direct the education and upbringing of his children, (as well as the right to have more children.)

## V    Claims

### A. Right of Access to the Court

34. While the Court may or may not enforce *Bounds*[4], the heightened requirements of *Lewis v. Casey* 518 U.S. 343 (1996) are helpful here. (1) Plaintiff was, or is, suffering "actual injury" by being "frustrated or impeded" in his right to file his 2254 by Defendant Dobias' directives, (2) in bringing a non-frivolous 2254 claim (the State actor violating the "no federal prosecution/no turning evidence over to the federal authorities" promises verified in the record police report and three witness affidavits, including one from a judge), and (3) at the same time that Defendant was acting, under color of law, as Plaintiff's attorney in a federal case. *Lewis*, 518 U.S. 343, 351-53, 55 (1996).

---

[4] *Bounds v. Smith*, 430 U.S. 817, 822 (1977)

35. Defendant caused Plaintiff actual injury of frustrating or impeding his filings, causing an untimeliness dismissal.[5]

36. Defendant's frustration of Plaintiff's access to the courts blocked a non-frivolous claim.[6] Plaintiff's 2254 case has never been rebutted on the merits, and compensatory damages are appropriate (adopting ¶¶ 3-8, 12, 28 above, for Plaintiff's claim, and also *Welch v. Michigan*, U.S. D.C. W.D. Mich, File No. 2:14-cv-243 to include all state-court post-conviction filings included therein).

37. Frustrated or Impeded: At the time Plaintiff wrote the letters (November of 2010 and following), Defendant was the only "access" to federal law, since the jails in which Plaintiff was housed had no adequate federal law (i.e. habeas corpus 2254) resources. For all that, Defendant maintained his position as counsel such that Plaintiff believed he could not and should not write the court any more letters, even after Plaintiff 's arrival at federal prison, and Defendant would take care of it, instead (but didn't).

38. The remedy is to declare that Defendant violated Plaintiff's constitutional rights to the courts (his § 2254 filing), or at least an injunction/declaratory relief under § 1983 to

---

[5] Two examples of actual injury appear in *Lewis* (due to interference by a defendant): "[The inmate] might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which…he could not have known." Another example of injury are that Plaintiff had suffered arguably actionable harm "that he wished to bring before the courts, but was so stymied by inadequacies of the law library [here, legal counsel] that he was unable even to file a complaint." *Lewis* at 351-53.

[6] To violate the right of court access, Defendant "frustrated or impeded" a 2254 claim that is not frivolous. *Lewis v. Casey*, 518 U.S. 343, 353. That means that the plea violation must be "arguable." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Plaintiff does not have to prove that he would have won the 2254. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002) (holding that losing a case on summary judgment does not make it frivolous, and that it could be the basis for a court claim); *Simkins v. Bruce*, 406 F.3d 1237, 1244 (10th Cir. 2005) ("*Lewis*" does not suggest that the plaintiff must prove a case within a case to show that the claim hindered or impeded by the defendant necessarily would have prevailed); *Gomez v. Vernon*, 962 F.Supp. 1296, 1302 (D. Idaho 1997). In *Christopher v. Harbury*, the Supreme Court required that plaintiff's plead the claim that they say was "frustrated or impeded." See, therefore, Plaintiff's complaint about denial of court access, which also set out the claim that was "frustrated or impeded." (¶¶12-14 above).

remove the Defendant-created obstacle with a "fresh start" for Plaintiff to have a procedurally and substantially fair 2254.

## B. Due Process

39. Defendant's letter to Plaintiff (Exhibit G) shows intention to stop him from filing. Even though the federal case was under Defendant's care, the order he gave to Plaintiff to "stop filing" carried consequences that neglected Plaintiff's state habeas rights. Defendant Dobias intentionally interfered with Plaintiff's liberty interest.

40. Plaintiff has exhausted his post-deprivation remedies, in both state and federal court, giving rise to, and making ripe, the issue under Complaint.

41. There is no grievance procedure available for this § 1983 against counsel.

## C. Legal Malpractice

42. The existence of an attorney-client relationship;

43. Defendant's negligence directly caused the Plaintiff to not file even a basic-form 2254 motion.

44. The Defendant's negligence was the proximate cause of the injury noted above.

45. The fact and extent of the injury alleged is not simply a "non-frivolous" filing (see Claim A, above), but a claim with all the factors to overturn the plea in the state court. This would have repaired the erroneously high criminal history in the federal case, and Plaintiff would have enjoyed a lower guideline range on his sentence and since Plaintiff received a sentence within the guideline range would probably recived a

sentence at least 48 months shorter plus credit for time served on the related but now set aside state conviction.

## D. Negligent Misrepresentation

46. The defendant made a material misrepresentation (i.e. that he would file Plaintiff's 2254-related issues for him…but only *after* the deadline passed, wrote that he would "have to research it"). [Exh. G].

47. Defendant's representation proved to be false.

48. The defendant was negligent in making the misrepresentation (and Petitioner's First Amendment rights), *i.e.*, the defendant breached a business or professional duty of care to provide accurate information to Plaintiff, whom he served.

49. The plaintiff suffered damages as a result (see Claim A, above).

## VI   Relief Requested

WHEREFORE, Plaintiff requests that this Court grant the following relief:

A. Declare that Defendant Dobias violated Plaintiff's First (or Eighth) Amendment rights when he denied, impeded or frustrated his access to the Court and caused Plaintiff's 28 U.S.C. § 2254 to be untimely.

B. Declare that Defendant Dobias violated Plaintiff's Fifth and Fourteenth Amendment rights to procedural due process (where a slam-sunk 2254 state court issue indirectly increased Plaintiff's federal sentence by at least four years) harming his liberty interest.

C. Declare that, under the Court's supplemental jurisdiction of 28 U.S.C. § 1367,

    Defendant Dobias (in his individual personal capacity) committed legal malpractice,

    negligent misrepresentation, or both, under color of law: Defendant acted negligently,

    made material misrepresentation, or both, harming Plaintiff's state-court habeas rights

    under 2254 while Defendant served as a federal defense attorney in Plaintiff's federal

    case, breaching a duty of care and causing harm while in an attorney-client

    relationship.

D. Issue an injunction to re-open Plaintiff 2254 and appoint attorney Howard W.

    Anderson III to represent, prepare, and file an amended 2254 to be heard on the

    merits of the state-court plea violation and vacate Plaintiff's state conviction.

E. Award compensatory damages to cover attorney's fees, discovery, costs and paralegal

    services for the appointed counsel in ¶D, above;

F. Award compensatory damages of $400,000 and punitive damages of $400,000 for

    each of the requests in ¶¶ A, B, and C, above.

G. Grant Plaintiff such other relief as it may appear Plaintiff is entitled to.


Respectfully Submitted,


_February 17, 2017_    /s/ _Eric Welch_

Date Executed

I swear and verify under penalty of perjury
pursuant to 28 U.S.C. § 1746 that the
foregoing is true and correct. Further, that it
has been filed this day under prison mailbox
rule in the institution's internal mail system
designed for legal mail, United States Postal
Service first-class postage pre-paid.

Eric D. Welch, *pro se*
10444-089
U.S. Penitentiary – Marion
P.O. Box 1000
Marion, IL 62959

CERTIFIED MAIL

Eric D. Welch
U.S. Penitentiary
P.O. Box 1000/ 10444-089
Marion, IL 62959

B

7013 2630 0000 0956 9692

U.S. POSTAGE
PAID
MARION, IL
62959
FEB 22 17
AMOUNT
**$0.00**
R2304N116685-04

UNITED STATES
POSTAL SERVICE

1004          49503

⟨⟩10444-089⟨⟩
U S Dist Court W D Michigan
110 Michigan ST NW
399 Federal Building
Grand Rapids, MI 49503
United States



Liberty
FOREVER

Liberty
FOREVER

FOREVER

PRIORITY
★ MAIL ★

TRACKED
★ ★ ★
INSURED

UNITED STATES
POSTAL SERVICE®          Label 107R, July 2013

For Domestic Use Only

Legal Mail
Envelope 1 of 2
- Court file
- Judge's Chambers



USP MARION
SPECIAL/LEGAL MAIL
DATE/TIME RECEIVED FROM USPS
DATE/TIME RECEIVED FROM MAIL ROOM 2-21-17 12⁴⁵p
RECEIVED BY
DATE/TIME DELIVERED 2-21-17 3⁵
DELIVERED BY

Eric D. _____
U.S. Penitentiary
P.O. Box 1000/10444-089
Marion, IL 62959

B





**UNITED STATES POSTAL SERVICE.**　　　　Retail

**P**　　US POSTAGE PAID
**$0.00**

Origin: 62959
Destination: 49503
0 Lb 15.40 Oz
Feb 22, 17　　　　　　1004
1848600059-04

**PRIORITY MAIL ®2-Day**

Expected Delivery Day: 02/24/2017　　 C020

**USPS TRACKING NUMBER**

9505 5116 0903 7053 0695 16

◇10444-089◇
U S Dist Court W D Michigan
110 Michigan ST NW
399 Federal Building
Grand Rapids, MI 49503
United States



Legal Mail

Envelope 2 of 2
- Stamp Filed Copy
- Defendants copy



Warden
United States Postmaster
Marion, IL 62959

FEB 2 2 2017

The enclosed letter was processed through
special mailing procedures for forwarding to you.
The letter has neither been opened nor inspected.
If the writer raises a question or problem over
which this facility has jurisdiction, you may
wish to return the material for any
further information or clarification.
If the writer encloses correspondence for
forwarding to another addressee, please return
the enclosure to the above address.

Warden
United States Postmaster
Marion, IL 62959

FEB 1 6 2017
Date

The enclosed letter was processed through
special mailing procedures for forwarding to you.
The letter has neither been opened nor inspected.
If the writer raises a question or problem over
which this facility has jurisdiction, you may
wish to return the material for any
further information or clarification.
If the writer encloses correspondence for
forwarding to another addressee, please return
the enclosure to the above address.

**USP MARION**
**SPECIAL/LEGAL MAIL**
DATE/TIME RECEIVED FROM USPS  2-21-17 /0%
TIME RECEIVED FROM MAIL ROOM  2-21-17 /12°°
RECEIVED BY          J Dooley
TIME DELIVERED       2-21-17/

placed additional postage
on/N

Item# 43768